394 So.2d 1332 (1981)
Ernest Roy GRIMES
v.
Dr. Alvin STANDER et al.
No. 13880.
Court of Appeal of Louisiana, First Circuit.
January 26, 1981.
*1333 Otha Curtis Nelson, Sr., Baton Rouge, for plaintiff-appellant Ernest Roy Grimes.
Donald S. Zuber, Baton Rouge, for defendant-appellee Dr. Alvin Stander.
Frank M. Coates, Jr., Baton Rouge, for defendant-appellee A. Faye Cooper.
Before ELLIS, COLE and WATKINS, JJ.
WATKINS, Judge.
This is an action brought by Ernest Roy Grimes against Dr. Alvin Stander, Alice Faye Cooper, Dr. Stander's office nurse, and St. Paul Fire & Marine Insurance Co., their professional liability insurer. This suit alleges defamation and medical malpractice. The case was tried before a jury. Upon the completion of plaintiff's presentation of his case, defendants moved for a directed verdict, which was granted. Plaintiff appeals. We affirm.
The granting of a directed verdict in a civil case tried before a jury is governed by Paragraph A of LSA-C.C.P. art. 1810, which reads as follows:
"A. A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury."
The background and principles for application of that paragraph of art. 1810 are well set forth in Campbell v. Mouton, 373 So.2d 237 (La.App.3d Cir. 1979), from which we quote:
"Moreover, since the source of LSA-C. C.P. article 1810A is the Federal Rules of Civil Procedure, we believe that the correct standard is that applied in the Federal Courts. See Madison v. Travelers Insurance Company, 308 So.2d 784 (La. 1975). This standard is succinctly stated in the following language penned by the U.S. Fifth Circuit Court of Appeal in Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969):
`On motions for directed verdict and for judgment notwithstanding the verdict *1334 the Court should consider all of the evidence not just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.'" (373 So.2d 237, 239)
We find that the trial court correctly applied the principles set forth in Campbell.
As was stated in Campbell, we must view and interpret the facts in the light most favorable to plaintiff. Interpreted most favorably to plaintiff, the facts relevant to a possible theory of recovery are as follows:
Plaintiff was operated upon for a calcium deposit in the knee joint by Dr. Stander on January 21, 1976. Thereafter, plaintiff made several follow-up visits to Dr. Stander's office to permit Dr. Stander to determine the extent of his progress and to obtain recommendations for treatment, including physical therapy. On some occasions, Dr. Stander was absent from the office. On Grimes' last visit, Grimes, according to his testimony, was told Dr. Stander was out of the office. Grimes made several inquiries to Mrs. Cooper about his condition, which he thought she attempted to brush off. Finally, Grimes handed Mrs. Cooper a note to Dr. Stander, in which he complained of Mrs. Cooper's supposed indifference to him and asked Dr. Stander to telephone him. He testified he saw Mrs. Cooper read the note, and then saw her pointing to her neck and leg in the presence of a man and a woman, and then pointing to Grimes, and all laughing heartily. Mrs. Cooper denied this ever happened. He then saw the woman leave and look closely at his neck and heard her say, "Nice day, isn't it?" After this alleged incident, Dr. Stander never telephoned Grimes although Grimes testified that he telephoned Dr. Stander's office at least fifteen additional times and asked to speak to Dr. Stander. Grimes' purpose in wanting Dr. Stander to telephone him was that he wanted to make another appointment.
Because he was in pain and his knee was stiff, Grimes saw several other doctors after that time and finally was operated upon for removal of scar tissue by Dr. Charles Strange of Baton Rouge. Dr. Strange's testimony interpreted most favorably to Grimes could be taken to indicate it was possible that the scar tissue would not have developed had Grimes continued to undergo the proper physical therapy.
Grimes was at intervals a mental patient, who constantly suffers from paranoid schizophrenia, which is a condition that produces erroneous perceptions or delusions of persecution. The only witness who testified that Dr. Stander did not telephone him with respect to making future appointments was Grimes. Mrs. Cooper, the receptionist, and the telephone operator at the clinic where Dr. Stander worked all denied that Grimes called, and Dr. Stander denied that he failed to telephone Grimes.
To prevail in an action for defamation, plaintiff must establish the following elements: (1) defamatory words, (2) publication, (3) falsity, (4) malice, actual or implied, and (5) resulting injury. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir. 1979). In the present case there is absolutely no showing that any words or actions defamatory of Grimes were spoken or done by Mrs. Cooper, and almost no showing that plaintiff suffered any real injury, unless we impute psychological injury to him, which was not established by the testimony with respect to his mental condition. Thus, no reasonable person could find that Grimes had been defamed, and the jury could not properly find there had been defamation.
*1335 With respect to malpractice we have only the testimony of Grimes, who psychiatric testimony established had delusions of persecution, that would tend to establish that Dr. Stander did not speak to Grimes on the telephone or return his calls. Opposed to that testimony, we have the testimony of four witnesses, Dr. Stander, Mrs. Cooper, the receptionist, and the telephone operator, that Grimes never telephoned, and that Dr. Stander never failed to return his call. If it had been shown that Dr. Stander had failed to speak to Grimes, and thereby abandoned his patient, and that there had been resultant injury to Grimes, evidence of malpractice sufficient to go to the jury or to prevent the granting of a directed verdict upon plaintiff's conclusion of his presentation of his case, might have been present, and we would reverse the trial court's holding. However, applying the reasoning dictated by the holding in Campbell, we find that reasonable and fair-minded men in the exercise of impartial judgment could not differ, but would agree, that Dr. Stander had not been telephoned, and had not failed to return Grimes' calls that he alone claimed were made, and that Grimes' testimony to the contrary, especially in light of his mental condition (paranoid schizophrenic), was unworthy of belief. There is thus no substantial evidence of malpractice to go to the jury. The trial court, we therefore find, properly granted the motion for a directed verdict.
The judgment of the trial court is affirmed. All costs to be paid by plaintiff-appellee.
AFFIRMED.