391 So.2d 1263 (1980)
Vera Jenkins MILLER and Ivy Lea Miller
v.
Ralph SMITH, d/b/a Skinneys, and Aetna Casualty and Surety Co.
No. 13521.
Court of Appeal of Louisiana, First Circuit.
October 6, 1980.
Rehearing Denied December 15, 1980.
Writ Granted February 6, 1981.
*1264 Paul H. Due, Baton Rouge, William M. Quin, Kentwood, for plaintiffs.
Iddo Pittman, Jr., Hammond, for defendants.
Before EDWARDS, LEAR and WATKINS, JJ.
EDWARDS, Judge.
Defendants, Ralph Smith, d/b/a Skinneys, and Aetna Casualty and Surety Co., hereinafter collectively called Skinney's,[1] appeal a trial court judgment awarding damages to Vera Jenkins Miller and Ivy Lea Miller. We reverse.
On the evening of May 13, 1977, plaintiffs went to dinner at Skinney's, a combination restaurant and lounge with a dance floor. They ordered a Wop salad and fried chicken. While eating, they observed Dominick Sassone, the bartender, spreading wax on the dance floor adjacent to their table. After Mrs. Miller had taken a few bites from a drumstick, a one-man band began to play "Today I Started Loving You Again." Mrs. Miller characterized the song as slow. The Millers got up and began to dance. Mrs. Miller found that the dance floor was "slippery, unusually slippery." Mr. Miller noticed "a spot if you put your foot in it it'd just take you downI mean, it was real slippery."
Despite their observation of the floor's condition, the Millers continued to dance until the song ended. Mrs. Miller testified she continued to dance because "It was a slow song" and "I didn't know I was going to fall."
After the dance was over, plaintiffs decided to leave the dance floor because, according to Mrs. Miller, "it was slippery, too slippery for us." As they headed towards their table, plaintiffs met Charles Addison and stopped momentarily to speak to him. Then, without saying anything to Mr. Miller, Mrs. Miller again headed for their table. Mr. Miller "told her to watch it" but after they had each taken a step or so, she fell and suffered a wrist fracture.
Plaintiffs brought suit against Skinney's and, following trial, judgment was rendered in Vera Miller's favor in the amount of $125,000.00 and in Ivy Miller's favor for $2,719.05. All costs were assessed against defendants who have appealed suspensively.
Appellants specify that the trial court erred in:
1. making a grossly excessive award;
2. finding Skinney's liable at all;
3. failing to find Vera Miller contributorily negligent; and
4. failing to find that plaintiffs had assumed the risk.
At our first reading, the trial court's written reasons for judgment seemed unusual and unlike the reasons for judgment generally found in a record. On oral argument, counsel for defendants-appellants raised the issue of authorship. Counsel for plaintiffs-appellees voluntarily acknowledged *1265 having written the reasons for judgment.
As an additional articulation of plaintiffs' case, we find the reasons for judgment to be excellent. We are, however, deprived of the court's own thoughts which often prove most valuable.
When a trial judge has provided no reasons for judgment, a reviewing court must divine them. When reasons are provided, a reviewing court must be assured that the thinking process was that of the judge and not an advocate in the lawsuit. It is one thing for victorious counsel to prepare a judgment comprised of the stark, final determinations of a case. It is quite another for counsel to present as the inner thoughts of a judge what amounts to a well-written brief.
In the present case, the reasons for judgment are counsel's, not the judge's. Counsel, in brief, repeatedly cites his own written reasons, a highly self-serving act. Contrary to our general practice, we cannot place any real value on the written reasons presented.
Appellants' claim that the amount awarded was grossly excessive appears valid. Because of our decision, however, there is no reason to review quantum.
Kavlich v. Kramer, 315 So.2d 282 (1975), and Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (1976), changed the law in slip and fall cases. Once the plaintiff establishes a prima facie case, the burden of proof then shifts to the defendant to go forward with the evidence to exculpate himself from the presumption that he was negligent. To establish a prima facie case, the plaintiff must show that he slipped, fell and was hurt because of a dangerous condition. In the present case, plaintiffs have not proven a prima facie case. While it is clear that Mrs. Miller slipped, fell and was hurt, it is not clear and was not proved that the dance floor was in a dangerous condition.
Dance floors are intended to be slippery to a degree, more so than the floors of supermarkets.[2] The mere slipperiness of a dance floor is not negligence per se. Hammonds v. Jackson, 132 Ga.App. 528, 208 S.E.2d 366 (Ga.App.1974); Nolan v. North Hills Golf Club, Inc., 21 App.Div.2d 695, 250 N.Y.S.2d 471 (1964). The court in Robinson v. Ipswich Post 1093, V. F. W., Inc., 343 Mass. 771, 178 N.E.2d 24 (1961), stated that a "highly polished surface is to be expected on dance hall floors."
Only when a dance floor is excessively slippery or when dance wax has been improperly applied will the floor be found unreasonably dangerous. Howard v. Johnoff Restaurant Co., 312 S.W.2d 55 (Mo. 1958); Durden v. Dranetz, 99 So.2d 716 (Fla.App.1958).
In the present case, there is no proof that dance floor wax was improperly applied. Nor is there proof that the dance floor was excessively slippery.
Mrs. Miller testified that she saw Dominick Sassone, the bartender, "shaking it (the wax) or throwing it out of a" container. Mr. Miller related that Sassone had dipped wax out of a cigar box. Shirley Blades "saw the wax being sprinkled." Wilhelmina Raley, a waitress at Skinney's, testified that when she applied dance wax, she sifted it in her hand and then "would just throw it around." She also stated that in her opinion, at times prior to plaintiff's accident, Sassone used too much wax and that, contrary to her own mode of spreading wax, Sassone would "just take it and throw it out." Miss Raley did not, however, see Sassone apply any dance wax on the night of plaintiff's fall.
*1266 There is no meaningful difference in any of the above testimony insofar as the manner Sassone spread dance wax is concerned. Whether he shook it or threw it out of a container, dipped it from a cigar box, sprinkled it, or, like Miss Raley, "just threw it out," the fact remains that he spread dance wax on the floor to be spread by the dancers.
Sassone's method of distributing wax is not negligent. Fishman v. Brooklyn Jewish Center, 234 App.Div. 319, 255 N.Y.S. 124, appeal dismissed without opposition 263 N.Y. 685, 189 N.E. 757 (1932), held that the scattering of wax particles intended to be spread by dancers themselves in the course of dancing could not be regarded as an uneven application of wax constituting actionable negligence. See also Jones v. Benevolent Protective Order of Elks, 17 Pa.D. & C.2d 233 (1958) and Kalinowski v. Young Women's Christian Association, 17 Wash.2d 380, 135 P.2d 852 (1943).
Mr. and Mrs. Miller testified that the dance floor was excessively slippery. Mrs. Miller described her fall: "I could see a shadow, I don't knowafter I fell I thought that must've been what it was, wax, it was a shadow of something a little dark, and by then I had had my foot up and I put it on down right into where he said. My foot went out from under me....."
Ollie Dell McNaff Gore and Shirley Blades also testified that the floor was too slippery. However, Ralph Smith, the proprietor, stated that wax was never spread until requested by the customers and Miss Raley noted that if the floor was not "slippery and slick," people would ask for wax because they couldn't dance without it.
Clearly, the dance floor was not excessively slippery on May 13, 1977. Only Mrs. Miller fell. Appellees cite Rosensweig v. Travelers Insurance Company, 333 So.2d 334 (La.App. 4th Cir. 1976), for the proposition that "a two foot square, very slippery area on a ballroom floor is an unreasonable hazard." We agree. However, in Rosensweig, a woman slipped twice on the same spot and told a person in authority, after which nothing was done for over one-half hour. The plaintiff then slipped and fell and two friends coming to his aid likewise slipped and fell. Five slips in addition to a half-hour's inaction conclusively proved the defendant liable. In the present case, only one person slipped and her testimony manifestly failed to prove either a foreign substance on the floor as in Rosensweig or a state of excessive slipperiness. Plaintiff's fall alone cannot create a presumption of defendant's fault. Bueche v. Alvin Roys, Inc., 348 So.2d 731 (La.App. 1st Cir. 1977).
Plaintiff's explanation of why she fell is remarkably similar to that found insufficient to fix liability in Hammonds v. Jackson, supra. In Hammonds, plaintiff slipped on a "slick spot" which at "this one spot wasmust have been mighty slippery, heavy wax or something(.)" In the present case, plaintiff saw "a shadow of something a little dark(.)" No wax was ever found, however. This statement, even taken with the explanation that the shadow was wax which was dispersed when plaintiff fell, is simply not enough to establish a dangerous condition.
A careful examination of the entire record convinces us that plaintiffs have failed to establish a prima facie case that Mrs. Miller fell because of a dangerous condition. There must be more than mere recitals of slipperiness plus the fact of a fall. Everyone who goes onto a dance floor takes some chance of slipping. Hammonds v. Jackson, supra; Durden v. Dranetz, supra. Plaintiffs simply did not carry their burden of proof. For the trial court to have found otherwise (as his judgment, without considering the "reasons," indicates he must have) was manifest error.
For the foregoing reasons, the judgment appealed from is annulled and reversed. Plaintiffs' petition is dismissed and all costs, both trial and appellate, are to be paid by Vera Jenkins Miller and Ivy Lea Miller.
REVERSED.
NOTES
[1] Skinneys was the named defendant. In actuality, the establishment involved was Skinney's.
[2] That slipperiness of a floor per se need not result in a proprietor's liability is shown by Bueche v. Alvin Roys, Inc., 348 So.2d 731 (La. App. 1st Cir. 1977). In that case, plaintiff slipped on the moisture on a steam room floor. The court held that there was no presumption of fault of the defendant simply because plaintiff was hurt, that the accident by itself did not establish the fact of an unusually slippery or unsafe condition, and that "`wet' was the normal condition of the steps during business hours." See also Gatti v. World Wide Health Studios of Lake Charles, Inc., 323 So.2d 819 (La.App. 2d Cir. 1975).